**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DOROTHY SANCHEZ, individually
and as next friend of Lisa Sanchez,

      Plaintiff-Appellant,

v.

GILBERT BACA, Captain;
NEW MEXICO DEPARTMENT
OF PUBLIC SAFETY; SELMINO
RAEL, President, New Mexico
Highlands University; MARGARET
GARZA, DR.; GARY SMITH,
Lieutenant; WILTON ROGERS;
NEW MEXICO HIGHLANDS
UNIVERSITY,

      Defendants-Appellees.

No. 98-2159
(D.C. No. CIV 96-934)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **BARRETT** , and **MURPHY** , Circuit Judges.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Dorothy Sanchez, individually and as next friend of her daughter Lisa Sanchez, appeals from the order of the district court granting defendants' motions for summary judgment and denying her motion for summary judgment against defendant Gary Smith. We affirm.

Sanchez had been the director of student support services at New Mexico Highlands University (NMHU) for twenty-four years. She administered a program designed to assist first generation college students who were predominantly Hispanic. She was employed on a year to year contract.

In April 1996, a racially inflammatory flyer, "El Nuevo Mexicano," was circulated on campus. The New Mexico State Police, in conjunction with the New Mexico Department of Public Safety (collectively "NMDPS defendants"), began an investigation at the request of NMHU officials because the flyer threatened death and violence against certain faculty and administrative personnel.

In the course of this investigation, the police learned that Sanchez might be using NMHU equipment in her home, which was against NMHU policy. The

police obtained three search warrants which resulted in one search of Sanchez' office and two searches of her home. Some equipment was found in her home. Falsified federal financial aid records and other official NMHU documents were found in her office as well as multiple copies of the hate flyer. According to defendants, this matter remains under investigation by both state and federal law enforcement officials. After the equipment was found in her home, the NMHU defendants placed Sanchez on suspension with pay and later gave her notice that her contract would not be renewed for the 1996-97 school year.

Sanchez then commenced this action in which she raised twenty-two claims, apparently under 42 U.S.C. § 1983, Title VII, and various state laws. She raised Fourth Amendment illegal search and seizure claims against the NMDPS defendants. She alleged the NMHU defendants violated her rights by suspending her with pay and by later not renewing her contract without proper due process procedures. She also alleged her liberty and First Amendment rights were violated. Sanchez raised claims on behalf of her daughter against the NMDPS defendants alleging Fourth Amendment search and seizure violations during the first search, when her daughter was home.

The district court dismissed Sanchez' claims brought against the NMDPS defendants pursuant to the Fifth Amendment and her claims for abuse of process and malicious prosecution. Sanchez does not appeal this order. The court also

granted all defendants' motions for summary judgment and denied her motion for summary judgment against defendant Lt. Gary Smith.

On appeal, Sanchez argues that her motion for summary judgment should have been granted. She also contends her Fourth Amendment rights were violated by the searches as defendants had no probable cause for any of the searches, the searches were pretexual, and the first warrant was unreasonable. She states that the NMHU defendants conspired with the NMDPS defendants, violated her Fourth Amendment rights by searching her office, and violated her property right in continued employment, her First Amendment rights of free speech and association, and her liberty interests.

"We review the entry of summary judgment de novo, drawing all reasonable inferences in favor of the nonmovants." Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994). The moving party must show there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. See id. The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. See id.

Sanchez asserts the NMDPS defendants violated the Fourth Amendment in searching her home twice and her office once. The first search of her home appears to have been the result of Lt. Smith's conversation with several people about the threatening flyer, which first brought police presence to the campus at

the administration's request. While speaking with Sanchez' secretary, Lt. Smith learned that Sanchez had taken some state property, including a computer, recorder, and associated items home and that she was performing hypnotherapy at her home as she had been told not to do it on campus. Lt. Smith verified that Sanchez did not have permission to take the equipment home. University officials then went to Sanchez' office, without police presence, to see if the equipment was there. It was not. Some NMHU equipment was found in Sanchez' home as a result of the search and she was suspended with pay.

The second search warrant was issued for Sanchez' office. Lt. Smith had learned through interviews with various individuals, including Sanchez' secretary, that Sanchez had been altering documents, including W-2 forms and tax returns, apparently to qualify first generation students for scholarships when their family income was too high. The search warrant was issued to find those altered documents.

During the execution of the second search warrant, a large number of copies of the hate flyer was discovered and Lt. Smith sought another search warrant for Sanchez' home to look for threatening letters. Lt. Smith also had information that Sanchez may have been involved in distributing the flyer as 500 copies were unaccounted for on her copy card and students had been seen using that card to copy the flyer.

We review the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring "that the magistrate had a substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quotation omitted). Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238.

We have reviewed the supporting affidavits contained in the appendix and conclude that each affidavit provided the magistrate with a substantial basis for concluding probable cause existed to justify the issuance of the warrants. Further, Sanchez has failed to show that the searches exceeded the warrants.

Sanchez has two main claims against the NMHU defendants. One is based on her suspension with pay and non-renewal of her employment contract. "Suspension with pay does not raise due process concerns." See Hicks v. City of Watonga, 942 F.2d 737, 746 n.4 (10th Cir. 1991) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544-45 (1985); Pitts v. Board of Educ. of U.S.D. 305, 869 F.2d 555, 556 (10th Cir. 1989)). No due process or liberty interests violations occurred due to Sanchez' suspension with pay.

Sanchez was employed pursuant to a year-to-year contract. That contract was not renewed. Sanchez has failed to show that she had a constitutionally protected property interest in her continued employment. "[A] nontenured school

district employee 'must have more than a unilateral expectation [of continued employment]. He must, instead, have a legitimate claim of entitlement to it.'" Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1185 (11th Cir. 1985) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)). In Sullivan, the court concluded that a teacher with a long employment history with the school may, under certain circumstances, have a legitimate claim to job tenure under certain circumstances.

Sanchez has not shown any such expectation. She therefore had no protected property interest in her continued employment, nor has she shown any mutually explicit understanding sufficient to create such an interest.

Secondly, Sanchez alleged that the NMHU defendants violated her liberty and First Amendment rights because her suspension was in retaliation for her speech on matters of public interest. Sanchez did not identify the incidents to which she was referring, but apparently some occurred after she filed the lawsuit and were added to her amended complaint. These comments cannot support a claim of retaliation occurring before the comments were made.

Sanchez' other allegations are vague. She stated that she was not offered the opportunity to clear her name prior to her suspension and that she was suspended "in retaliation for her association and speech on matters of public interest concerning University administration." App., Vol. 1 at 18. Later, she

mentions flyers that were critical of the NMHU president and suspicions that she may have been involved with them. None of these conclusory accusations is sufficient to state a viable claim.

The remainder of Sanchez' claims arise out of these three main issues. She raised claims of trespass, conversion, a property right in the computer equipment as her personal items were on it, and Fourth Amendment violations on behalf of her daughter who was at home asleep during the first search. She has not stated any viable claim.

We have reviewed the parties' briefs, the appendices, and the district court's oral explanation of its judgment and its opinion. We conclude that the district court properly granted defendants' motion for summary judgment and denied Sanchez' motion for summary judgment. The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

Entered for the Court


James E. Barrett
Senior Circuit Judge